UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-23411-RAR

**ANTHONY LOPEZ**,

    Petitioner,

v.

**RICKY D. DIXON**,

    Respondent.
_____/

## ORDER DISMISSING 28 U.S.C. § 2254 PETITION

**THIS CAUSE** is before the Court upon a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, in which the Petitioner, Anthony Lopez, attacks the constitutionality of a sentence imposed by the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, Case No. F18-20255. *See* Petition ("Pet."), [ECF No. 1]. Respondent argues, *inter alia*, that the Court must dismiss the Petition because it "was filed two years after the federal limitation period expired." Response to Order to Show Cause ("Resp."), [ECF No. 13], at 10. After considering the Petition and Response, the Court agrees with Respondent that the instant Petition is time-barred under § 2244(d) and must be **DISMISSED**.

## PROCEDURAL HISTORY

On October 10, 2014, Petitioner was charged by Information in Case No. F14-19584 with several offenses related to the possession and trafficking of several controlled substances. *See* F14-19584A Information, [ECF No. 14-1], at 11–19. Petitioner ultimately received a five (5) year sentence followed by one (1) year of probation in that case. *See* Violation of Probation Affidavit, [ECF No. 14-1], at 23. While serving the probationary portion of his sentence, Petitioner was

again charged by Information—this time in Case No. F18-20255—with trafficking in cathinone (also known as "molly"), possessing contraband in a correctional institution, and possession of drug paraphernalia. *See* F18-20255 Information, [ECF No. 14-1], at 26–30; *see also* Violation of Probation Affidavit, [ECF No. 14-1], at 23 (accusing Petitioner of violating the terms of his probation in Case No. F14-19584 by committing the new law violations in Case No. F18-20255).

On **July 20, 2020**, Petitioner appeared before a state court trial judge for a change of plea hearing. Petitioner agreed "to be sentenced to 84 months state prison . . . [with] a three year mandatory minimum" so that he could resolve both the violation of probation issue in Case No. F14-19584 and the new felony charges in Case No. F18-20255. Change of Plea Hr'g Tr., [ECF No. 14-1], at 38–39. The state judge engaged in a colloquy with Petitioner where Petitioner confirmed that he had discussed this plea agreement with his attorney and that he was knowingly and voluntarily agreeing to accept the State's plea offer and to plead guilty to these offenses. *See id.* at 49–55. The state judge accepted Petitioner's guilty plea, adjudicated Petitioner guilty, and sentenced Petitioner to 84 months in accordance with Petitioner's plea agreement with the State. *See* Judgment and Sentencing Orders, [ECF No. 14-1], at 65–72. The judgment and sentencing orders were docketed by the Clerk of the Court on **July 23, 2020**. *See id.* Petitioner did not file a direct appeal from his conviction and sentence.

On **July 13, 2022**,[1] Petitioner filed a "Motion Seeking Postconviction Relief" under Fla. R. Crim. P. 3.850 in state court. *See* Postconviction Motion, [ECF No. 14-1], at 74–91. Petitioner raised three claims in his Postconviction Motion: (1) that defense counsel failed to "have knowledge of [the] Florida Department of Corrections' policies and procedure rules [sic] in the

---

[1] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

seizure as contraband," *id.* at 78; (2) that the State failed to establish the essential elements of drug trafficking before he plead guilty, *id.* at 82; and (3) that defense counsel was ineffective for failing to "file a motion to suppress [an] illegal statement made by Defendant without being read [his] *Miranda* rights," *id.* at 85.  The State filed a response to the Postconviction Motion and argued that the Motion should be dismissed as untimely because it was not "filed within two (2) years [of] the date the conviction [became] final[.]"  State's Response, [ECF No. 14-1], at 148.  On **October 19, 2022**, the state postconviction court found that Petitioner's claims were "refuted by the record" and summarily denied the Postconviction Motion. Order Denying Postconviction Motion, [ECF No. 14-1], at 152.  Petitioner moved for rehearing on **December 6, 2022**, *see* Motion for Rehearing, [ECF No. 14-1], at 154–64, and the state postconviction court summarily denied it on **January 11, 2023**, *see* Order Denying Motion for Rehearing, [ECF No. 14-1], at 166.

Petitioner appealed the denial of his Postconviction Motion to Florida's Third District Court of Appeal ("Third DCA").  *See* Notice of Appeal, [ECF No. 14-1], at 168.  The State filed a motion to dismiss the appeal, arguing that "the notice of appeal was not filed in a timely manner, and, as a result, [the Third DCA] lacks jurisdiction to entertain the appeal, and the appeal should be dismissed."  Motion to Dismiss, [ECF No. 14-2], at 15.  On July 5, 2023, the Third DCA affirmed the state postconviction court's decision on the merits—and did not grant the State's request to dismiss the appeal as untimely.  *See Lopez v. State*, 367 So. 3d 583, 584 (Fla. 3d DCA 2023) (citing Florida cases for the proposition that "a defendant is bound by the statements he makes under oath during a plea colloquy").  The Third DCA's mandate issued on **August 18, 2023**.  *See* Mandate, [ECF No. 14-2], at 148.

Petitioner also filed additional applications for postconviction relief while the appeal of his Postconviction Motion was pending.  First, on **February 23, 2023**, Petitioner filed a second Rule

3.850 motion ("Second Postconviction Motion") alleging the existence of "newly discovered evidence" which purportedly shows that the State could not prove that Petitioner "was in possession of any illegal substance." Second Postconviction Motion, [ECF No. 14-1], at 171. As far as the Court can tell, the Second Postconviction Motion is still pending before the state postconviction court.

Second, on **June 20, 2023**, Petitioner filed identical petitions for writ of mandamus with both the state postconviction court and the Third DCA. *See* Postconviction Court Mandamus Petition, [ECF No. 14-2], at 150–53; Third DCA Mandamus Petition, [ECF No. 14-2], at 156–59. Petitioner sought mandamus relief to "compel the lower tribunal" to rule on his Second Postconviction Motion. *Id.* at 153, 159. The mandamus petition was denied by the Third DCA on **June 27, 2023**, *see* Third DCA Order Denying Mandamus Petition, [ECF No. 14-2], at 164, and by the state postconviction court on **August 16, 2023**, Postconviction Court Order Denying Mandamus Petition, [ECF No. 14-2], at 164.

The instant Petition was filed on **August 29, 2023**. *See* Pet. at 1.[2]

## ANALYSIS

### A. The Petition is Untimely Under 28 U.S.C. § 2244(d)(1)(A)

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") created a one-year statute of limitations for state prisoners to bring § 2254 petitions in federal court. *See* 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus

---

[2] The Petition is marked with an institutional stamp indicating that it was received by prison officials on August 29, 2023. *See* Pet. at 1. However, the Petition was signed by Petitioner on August 28, 2023. *See id.* at 14. When there is a "conflict between the date on the certificate of service and the date on the institutional stamp, the latter controls" since the stamp more accurately describes when the filing was actually delivered to prison officials for mailing. *Forbes v. Sec'y, Dep't of Corr.*, No. 20-CV-60009, 2023 WL 2071793, at *2 n.3 (S.D. Fla. Feb. 17, 2023) (citing *Cole v. McNeil*, No. 09-CV-216, 2010 WL 1757945 (N.D. Fla. Apr. 1, 2010)).

by a person in custody pursuant to the judgment of a State court."). That limitation period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). AEDPA's limitations period is tolled during "[t]he time . . . which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2). To be "properly filed," as that term is used, a postconviction motion's "delivery and acceptance [must be] in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

A judgment becomes final under § 2244(d)(1)(A) when "[the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). Where, as here, a habeas petitioner does not file a direct appeal, his judgment becomes final "on the date that the time for seeking direct review expired[.]" *Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir. 2002). In Florida, a criminal defendant must file a notice of appeal within "30 days following rendition of a written order imposing sentence." FLA. R. APP. P. 9.140(b)(3); *see*

*also Hanfield v. Sec'y, Fla. Dep't of Corr.*, No. 22-CV-61092, 2023 WL 2976181, at *2 (S.D. Fla. Mar. 22, 2023) ("Because [the petitioner] did not appeal from the trial court's [judgment], her convictions and sentences became final thirty days later[.]").

The state trial court adjudicated Petitioner guilty and imposed its sentence on **July 23, 2020**. *See* Judgment and Sentencing Orders, [ECF No. 14-1], at 65–72.[3] Since Petitioner did not appeal his conviction, his judgment normally would have become final thirty days later: **August 22, 2020**. *See Bridges*, 284 F.3d at 1202. However, since August 24, 2020, was a Saturday, Petitioner's 30-day period to file a notice of appeal extended until the next weekday: **Monday, August 24, 2020**. *See* FED. R. CIV. P. 6(a)(1)(C) ("When [a period of time] is stated in days . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."); FLA. R. GEN. PRAC. & JUD. ADMIN. 2.514(a)(1)(C) (same). Petitioner's one-year period to file his § 2254 petition began to run the next day, **August 25, 2020**. *See* FED. R. CIV. P. 6(a)(1)(A) ("When the period is stated in days . . . exclude the day of the event that triggers the period.").

Petitioner's one-year limitations period under AEDPA was set to expire on "the anniversary of the date it began to run[,]" *i.e.*, **August 25, 2021**. *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008). The only way this limitations period could be tolled is if Petitioner "filed [an] application for State post-conviction or other collateral review" before August 25, 2021. 28 U.S.C. § 2244(d)(2); *see also San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) ("The AEDPA clock continues to run until the individual seeking review files a state motion for post-

---

[3] Respondent explains that, even though the judgment was signed on July 20, 2020, the judgment and sentencing orders were not "issued" until they were filed with the Clerk of the Court on July 23, 2020. Resp. at 8. The Court agrees. Under Florida law, a judgment is not "rendered," and cannot be appealed, until "a signed, written order is filed with the clerk of the lower tribunal." FLA. R. APP. P. 9.020(h).

conviction relief."). Unfortunately for Petitioner, the record is clear that he did not file a postconviction motion until **July 13, 2022**, *see* Postconviction Motion, [ECF No. 14-1], at 74–91, which was already many months after AEDPA's one-year limitations period fully elapsed, so there was nothing left for the Postconviction Motion to toll. *See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition like Webster's that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Since the Petition was filed on **August 29, 2023**—two years after the limitations period of § 2244(d)(1)(A) had already expired—the Court agrees with Respondent that the Petition is untimely.

### B. *The Actual Innocence Exception Does Not Apply*

In addition to the standard limitations period of § 2244(d)(1)(A), a § 2254 habeas petition can be considered timely if "one of the three other limitations periods available in § 2244(d)(1)" apply, or if the habeas petitioner proves that he is entitled to rely on the "two extremely limited" equitable exceptions to § 2244(d)(1): equitable tolling or actual innocence. *Hill v. Dixon*, No. 23-CV-21360, 2023 WL 3864061, at *5 (S.D. Fla. June 7, 2023). Petitioner does not avail himself of the alternative § 2244(d)(1) limitations periods nor has he shown that he is entitled to equitable tolling, so the Court will not discuss these exceptions further. *See id.* Instead, Petitioner explicitly argues that he has discovered "withheld information" that purportedly "establish[s] my actual innocence." Pet. at 12–13. After reviewing this "evidence," the Court finds that it falls far short of the high standard needed to demonstrate that Petitioner was actually innocent.

A habeas petitioner who makes "a credible showing of actual innocence [can] pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). The habeas petitioner bears the burden of

showing that his "new evidence" is sufficient to prove that he is actually innocent. *See Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim 'with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995))). A petitioner must both proffer the existence of "new reliable evidence that was not presented at trial" and that "no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012). Evidence that merely challenges the legal sufficiency of a conviction is not sufficient. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency.").

Although Petitioner never explicitly identifies what the "new evidence" underpinning his actual innocence claim is, it is clear from the context of the Petition that he is referring to a March 20, 2020 Letter and an April 15, 2020 Email that his defense attorney sent to the prosecutor. *See* Pet. at 9. In this correspondence, defense counsel recounted the deposition testimony of the corrections officer who conducted a random search of Petitioner's room and discovered the contraband narcotics. *See* Letter, [ECF No. 1-1], at 9–10; Email, [ECF No. 1-1], at 11. Defense counsel relayed to the prosecutor that this corrections officer admitted that "the locker where the drugs were discovered was not assigned to Lopez, did not have a lock and could have been used by any other inmate in that particular cell/room." Email, [ECF No. 1-1], at 11. Petitioner, rather incredibly, now uses the Letter and the Email as "proof" that the correctional officers lied under oath, that the locker was illegally searched, that the State suppressed exculpatory information, and

that his subsequent interrogation was illegal because he was not advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). *See* Pet. at 5, 7, 9.

The Court finds that these documents do not come close to meeting the actual innocence exception for two reasons. *First*, their scope is far narrower than Petitioner suggests. Although Petitioner claims that the evidence is proof that the correctional officers lied and that his constitutional rights were repeatedly violated, the Letter and Email merely discuss the correctional officer's testimony that the locker where the drugs were found could have been accessed by other people, not just Petitioner. *See* Letter, [ECF No. 1-1], at 9–10; Email, [ECF No. 1-1], at 11. Neither the Letter nor the Email discuss the truthfulness of the officer's testimony, the existence of other exculpatory testimony, the legality of the search, or whether Petitioner was read his *Miranda* rights before he was interrogated. *See id.* The other salacious inferences Petitioner draws do not derive from the text of the Letter or the Email and are instead impermissibly based on rank speculation and wishful thinking. *See Stafford v. Saffle*, 34 F.3d 1557, 1562 (10th Cir. 1994) (holding that "highly speculative and inconclusive" evidence "does not rise to the 'extraordinarily high' threshold of evidence of [actual] innocence"); *McCloud v. Sec'y, Fla. Dep't of Corr.*, No. 19-CV-591, 2022 WL 252404, at *4 (M.D. Fla. Jan. 27, 2022) ("[S]peculation does not constitute 'reliable' evidence for purposes of establishing actual innocence."); *see also Barbour v. Allen*, No. 01-CV-612, 2007 WL 9917006, at *14 (M.D. Ala. Mar. 1, 2007) (citing cases showing that "speculation is insufficient to support an actual innocence claim").

*Second*, the <u>actual</u> contents of the Letter and Email do not contradict any of the evidence indicating that Petitioner unlawfully trafficked a controlled substance. Reading the Letter and Email in the light most favorable to Petitioner, they reveal the arresting officer agreed that "it is possible that the Stand-up locker [where the drugs were found] was someone else's." Letter, [ECF

No. 1-1], at 10; *see also* Email, [ECF No. 1-1], at 11 ("[T]he locker where the drugs were discovered was not assigned to Lopez . . . and could have been used by any other inmate in that particular cell/room."). At first blush, this information looks like it could be used to challenge whether Petitioner was "unlawfully and knowingly in actual or constructive possession of . . . cathinone" since the locker where the controlled substances were found could have been used by other people. F18-20255 Information, [ECF No. 14-1], at 27. The apparent usefulness of this information, however, immediately evaporates once additional evidence is introduced. For instance, the arresting officer confirmed that he personally "observed the Defendant separating the substance into different little baggies," demonstrating that Petitioner, in fact, "knowingly possessed" the drugs. Arrest Affidavit, [ECF No. 1-1], at 75. And, "[w]hen questioned, the Defendant admitted that the substance was molly[.]" Letter, [ECF No. 1-1], at 10. This evidence, standing alone, is more than enough to prove that Petitioner knowingly possessed a trafficking amount of a controlled substance, even if drugs were found in a communal locker. *See, e.g.*, *Jorge v. State*, 861 So. 2d 1279, 1280 (Fla. 3d DCA 2003) (affirming trafficking conviction, even though "another person had been driving the defendant's vehicle," because defendant had "knowledge that cocaine was in the bag" and the bag was "within arm's reach" of the defendant).[4]

Since the Letter and Email do not undermine any of the evidence showing that Lopez knowingly possessed a trafficking amount of a controlled substance, Lopez has failed to raise any "sufficient doubt about [his] guilt to undermine confidence in the result[.]" *Schlup*, 513 U.S. at

---

[4] In addition, Petitioner swore during his change of plea colloquy that he committed the offense and there was a factual basis for his guilty plea. *See* Change of Plea Hr'g Tr., [ECF No. 14-1], at 53–56. Petitioner cannot disavow his previous testimony now that it is convenient for him to do so. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

317. Accordingly, the actual innocence exception does not apply and there is no other exception that excuses the lateness of the Petition. The Court, therefore, **DISMISSES** the Petition as time-barred.

### EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record. (cleaned up)).

### CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA"). A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition. Rather, to pursue an appeal, a petitioner must obtain a COA. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a district court "denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims" the movant must also show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Here, reasonable jurists would not find the Court's procedural ruling that the Petition is untimely to be debatable. Accordingly, a COA is denied and shall not issue.

## **CONCLUSION**

Having carefully reviewed the record and governing law, it is

**ORDERED AND ADJUDGED** that the Petition, [ECF No. 1], is **DISMISSED** as untimely. All pending motions are **DENIED as moot**. Any demands for an evidentiary hearing are **DENIED**, and a certificate of appealability shall **NOT ISSUE**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami Florida, this 14th day of December, 2023.

_____
RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE

cc: counsel of record

Anthony Lopez
DC # M47459
Everglades Correctional Institution
Inmate Mail/Parcels
1599 SW 187th Avenue
Miami, FL 33194
PRO SE